**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC,<br><br>    Plaintiff,<br><br>  V.<br><br>EROAD LIMITED and CORETEX LIMITED,<br><br>    Defendants. | Civil Action No. <u>2:25-cv-00616</u><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

  Plaintiff Fleet Connect Solutions LLC ("<u>Fleet Connect</u>" or "<u>Plaintiff</u>") files this complaint against EROAD Limited and Coretex Limited (collectively, "<u>Defendants</u>") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

<u>**NATURE OF THE ACTION**</u>

  1.  This is a patent infringement action to stop Defendants' infringement of the following United States Patents (collectively, the "<u>Asserted Patents</u>"):

| | Patent Number | Title | Available At |
|---|---|---|---|
| 1 | 7,058,040 | Channel Interference Reduction | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7058040 |
| 2 | 7,742,388 | Packet Generation Systems and Methods | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7742388 |
| 3 | 8,005,053 | Channel Interference Reduction | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8005053 |
| 4 | 7,656,845 | Channel Interference Reduction | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7656845 |
| 5 | 7,260,153 | Multi Input Multi Output Wireless Communication Method and Apparatus Providing Extended Range | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7260153 |

|   | Patent Number | Title | Available At |
|---|---|---|---|
|   |   | and Extended Rate Across Imperfectly Estimated Channels |   |
| 6 | 6,633,616 | OFDM Pilot Tone Tracking for Wireless LAN | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6633616 |
| 7 | 6,549,583 | Optimum Phase Error Metric for OFDM Pilot Tone Tracking in Wireless LAN | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6549583 |
| 8 | 7,206,837 | Intelligent Trip Status Notification | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7206837 |
| 9 | 7,593,751 | Conducting Field Operations Using Handheld Data Management Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7593751 |
| 10 | 6,961,586 | Field Assessments Using Handheld Data Management Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6961586 |
| 11 | 8,494,581 | System and Methods for Management of Mobile Field Assets *via* Wireless and Held Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8494581 |
| 12 | 6,647,270 | Vehicletalk | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6647270 |
| 13 | 7,092,723 | System and Method for Communicating Between Mobile Units | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7092723 |
| 14 | 7,741,968 | System and Method for Navigation Tracking of Individuals in a Group | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7741968 |

2.    Plaintiff seeks monetary damages.

## **PARTIES**

3.    Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4.    Based on public information, Defendant EROAD Limited is a limited liability company organized and existing under the laws New Zealand, with its principal place of business

located at 260 Oteha Valley Road, Albany, Auckland 0632, New Zealand.

5.    Based on public information, Defendant Coretex Limited is a limited liability company organized and existing under the laws New Zealand, with its principal place of business located at 260 Oteha Valley Road, Albany, Auckland 0632, New Zealand.

6.    Based on public information, Defendants engage in making, using, selling, offering for sale, importing, or otherwise providing, directly or indirectly, in the United States and in this State and District, products and services with features and functionalities that infringe the Asserted Patents.

7.    Based on public information, EROAD Limited has operations in New Zealand, North America and Australia with customers ranging in size from small fleets through to large enterprise customers.[1]

8.    Based on public information, EROAD Limited also "employs almost 300 staff located across New Zealand, Australia and North America." *EROAD to acquire Coretex, accelerating strategic plans and enabling faster growth in North America*, EROAD.COM, https://www.eroad.com/newsroom/eroad-to-acquire-coretex-accelerating-strategic-plans-and-enabling-faster-growth-in-north-americ/ (last visited June 5, 2025).

9.    Based on public information, Coretex Limited is "a provider of vertically specialized enterprise-grade telematics solutions in North America, Australia and New Zealand." *Id.*

10.    Based on public information, on July 14, 2021, EROAD Limited entered into an agreement to acquire one hundred percent (100%) ownership of Coretex Limited.  *See* CORETEX.COM, https://www.coretex.com/company/blog/nz-commerce-commission-clears-eroad-

---

[1] *See* https://api.nzx.com/public/announcement/383042/attachment/359507/383042-359507.pdf

acquisition-of-coretex/ ("EROAD announced on 14 July 2021 that it had entered into a conditional

agreement to acquire 100% of Coretex Limited.") (last visited June 5, 2025).

## JURISDICTION AND VENUE

11.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though

fully set forth in their entirety.

12.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§

271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under

28 U.S.C. § 1331 and § 1338(a).

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other

things, Defendants are not residents of the United States, and thus may be sued in any judicial

district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corporation*,

889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in TC Heartland does not

alter" the alien-venue rule.).

14.     Defendants are subject to this Court's specific and general personal jurisdiction under

due process because of Defendants' substantial business in this District, in the State of Texas, and

in the United States, including: (i) at least a portion of the infringements alleged herein; and (ii)

regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving

substantial revenue from goods and services provided to individuals in this state, in this District,

and in the United States.

15.     Specifically, Defendants intend to do and do business in, have committed acts of

infringement in this State of Texas, and in the United States, directly or through intermediaries,

and offers their  products or services, including those accused of infringement here, to customers

and potential customers located in this state, including in this District, and in the United States.

16.     Defendants have purposefully directed infringing activities at residents of the State of

Texas, and this litigation results from those infringing activities.  Defendants regularly sell (either directly or indirectly), their products within this District.  For example, Defendants have placed and continue to place the Accused Products into the stream of commerce via an established distribution channel with the knowledge or understanding that such products are being and will continue to be sold in this District and the State of Texas.  Defendants are subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to their substantial and pervasive business in this State and District, including their infringing activities alleged herein, from which Defendants derive substantial revenue from goods sold to Texas residents and consumers.

17.    Upon information and belief, Defendants ship and cause to be shipped into the District infringing products and materials instructing their customers to perform infringing activities to their employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within this District.

18.    Defendants market, sell, and deliver Accused Products in this District and have committed acts of infringement in this District.

19.    Defendants have committed acts of direct patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

20.    Defendants commit acts of infringement in this District, including, but not limited to, importing, selling, offering for sale, importing, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

## THE ASSERTED PATENTS AND ACCUSED PRODUCTS

21.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

22.    Based upon public information, Defendants own, operate, advertise, and/or control the websites https://www.eroad.com/ and https://www.coretex.com/, through which they advertise, sell, offer to sell, provide, and/or educate customers about their products and services.

23.    Defendants make, use, cause to be used, sell, offer for sale, import, provide, supply, and/or distribute one or more "EROAD" and/or "Coretex" fleet management platform and tracking solutions, including, but not limited to, the **EROAD fleet management application/software/website, EROAD web-based software application (MyEROAD), EROAD Core 360 fleet management suite, Coretex Platform (Coretex360 web application), Core DVIR, Electronic Logbook, EROAD Assist Mobile app, Drive ELD app, Coretex Drive app, MyEROAD Mobile app, Coretex Mobile app, EROAD ELD, Ehubo ELD, Ehubo2, Ehubo2.2, Coretex360 ELD, CoreHub, CoreHub Xtreme, Coretex TMU1500, StealthNet (4G LTE Asset Tracking Gateway), EzTracTM HE (4G LTE Asset Tracking Gateway), SolarNet (Solar Powered 4G LTE Asset Tracking Gateway), Tubo, Elocate, AssetTrac, EROAD ETrack Wired, ETrack Wired, TMU600 tracking unit, TMU1500 tracking unit, TMU1500, TMU750, TMU300, TMU110, EROAD Where, EROAD Where mini, Clarity dashcam, Clarity Get dashcam, Clarity Solo dashcam, Clarity Connected dashcam, Clarity Edge dashcam, Universal Tag Sensor, Temperature, Advanced Wireless Door Sensor, Fuel Sensor, Lift Arm Sensor, CoreRFID, Drum Rotation Sensor, Water Add Sensor, Washout Sensor**, other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those

products and solutions (collectively, the "Accused Products").  *See* **Exhibits A–R** (Evidence of Use Regarding Infringement of the Asserted Patents).

24.     Defendants, using the Accused Products, perform wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various protocols and implementations, including, but not limited to, Bluetooth, IEEE 802.11, and LTE protocols and various subsections thereof, including, but not limited to, 802.11b and 802.11n.

25.     The wireless communications performed and/or implemented by the Defendants using, *e.g.*, the Accused Products, among other things, generates and transmits packets for wireless communications and communicate data via a plurality of wireless transceivers using a plurality of wireless protocols, and encode data pursuant to one or more of those wireless protocols

26.     Defendants, using the Accused Products, perform singular value decomposition of estimated channel matrices, transmit data over various media, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal frequency division multiplexed ("OFDM") receivers, and various methods of processing OFDM symbols.

27.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I:   INFRINGEMENT OF U.S. PATENT NO. 7,058,040**

28.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

29.     The USPTO duly issued U.S. Patent No. 7,058,040 (the "'040 patent") on June 6, 2006, after full and fair examination of Application No. 09/962,718, which was filed on September

21, 2001.

30.    Fleet Connect owns all substantial rights, interest, and title in and to the '040 patent, including the sole and exclusive right to prosecute this action and enforce the '040 patent against infringers and to collect damages for all relevant times.

31.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '040 patent.

32.    The claims of the '040 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods of transmitting data over media having overlapping frequencies.

33.    The written description of the '040 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

34.    Defendants have directly infringed one or more claims of the '040 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

35.    Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '040 patent, as detailed in **Exhibits A–B** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,058,040).

36.    Fleet Connect has been damaged as a result of the infringing conduct by Defendants

alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 7,742,388

37.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

38.    The USPTO duly issued U.S. Patent No. 7,742,388 (the "'388 patent") on June 22, 2010, after full and fair examination of Application No. 11/185,665, which was filed July 20, 2005.

39.    Fleet Connect owns all substantial rights, interest, and title in and to the '388 patent, including the sole and exclusive right to prosecute this action and enforce the '388 patent against infringers and to collect damages for all relevant times.

40.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '388 patent.

41.    The claims of the '388 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

42.    The written description of the '388 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

43.     Defendants have directly infringed, and continue to directly infringe, one or more claims of the '388 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

44.     Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '388 patent, as detailed in **Exhibits C–D** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,742,388).

45.     Defendants had knowledge of the '388 patent at least as of the date Defendants were notified of the filing of this action.

46.     Since at least the time of receiving the complaint, Defendants have indirectly infringed and continue to indirectly infringe the '388 patent by inducing others to directly infringe the '388 patent.  Defendants have induced and continue to induce customers and end-users, including, but not limited to, Defendants' customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '388 patent by providing or requiring use of the Accused Products.  Defendants have taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '388 patent, including, for example, claim 1.  *See* Exhibits C–D.

47.     Such steps by Defendants have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support to users.  Defendants have been performing these steps, which constitute induced infringement with the knowledge of the '388 patent and with the

knowledge that the induced acts constitute infringement.  Defendants have been aware that the normal and customary use of the Accused Products by others would infringe the '388 patent. Defendants' inducement is ongoing.  *See* Exhibits C–D.

48.    Since at least the time of receiving the complaint, Defendants have indirectly infringed and continue to indirectly infringe by contributing to the infringement of the '388 patent. Defendants have contributed and continue to contribute to the direct infringement of the '388 patent by their customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '388 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '388 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.  *See* Exhibits C–D.

49.    Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Fleet Connect's patent rights.

50.    Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

51.    Defendants' infringement of the '388 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

52.    Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III: <u>INFRINGEMENT OF U.S. PATENT NO. 8,005,053</u>**

53.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

54.     The USPTO duly issued U.S. Patent No. 8,005,053 (the "'053 patent") on August 23, 2011, after full and fair examination of Application No. 12/696,760, which was filed on January 29, 2010.  A Certificate of Correction was issued on February 14, 2012.

55.     Fleet Connect owns all substantial rights, interest, and title in and to the '053 patent, including the sole and exclusive right to prosecute this action and enforce the '053 patent against infringers and to collect damages for all relevant times.

56.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '053 patent.

57.     The claims of the '053 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of data transmission in wireless communication systems.

58.     The written description of the '053 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

59.     Defendants have directly infringed one or more claims of the '053 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused

Products.

60.     Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '053 patent, as detailed in **Exhibit E** (Evidence of Use Regarding Infringement of U.S. Patent No. 8,005,053).

61.     Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: **INFRINGEMENT OF U.S. PATENT NO. 7,656,845**

62.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

63.     The USPTO duly issued U.S. Patent No. 7,656,845 (the "'845 patent") on February 2, 2010, after full and fair examination of Application No. 11/402,172, which was filed on April 11, 2006. A Certificate of Correction was issued on November 30, 2010.

64.     Fleet Connect owns all substantial rights, interest, and title in and to the '845 patent, including the sole and exclusive right to prosecute this action and enforce the '845 patent against infringers and to collect damages for all relevant times.

65.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '845 patent.

66.     The claims of the '845 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and

methods of wireless communication with a mobile unit.

67.     The written description of the '845 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

68.     Defendants have directly infringed one or more claims of the '845 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

69.     Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '845 patent, as detailed in **Exhibits F–G** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,656,845).

70.     Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V:  INFRINGEMENT OF U.S. PATENT NO. 7,260,153

71.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

72.     The USPTO duly issued U.S. Patent No. 7,260,153 (the "'153 patent") on August 21, 2007, after full and fair examination of Application No. 10/423,447, which was filed on April 28, 2003.

73.     Fleet Connect owns all substantial rights, interest, and title in and to the '153 patent,

including the sole and exclusive right to prosecute this action and enforce the '153 patent against infringers and to collect damages for all relevant times.

74.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '153 patent.

75.    The claims of the '153 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

76.    The written description of the '153 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

77.    Defendants have directly infringed one or more claims of the '153 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

78.    Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '153 patent, as detailed in **Exhibits H–I** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,260,153).

79.    Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest

and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VI: <u>INFRINGEMENT OF U.S. PATENT NO. 6,633,616</u>**

80.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

81.     The USPTO duly issued U.S. Patent No. 6,633,616 (the "'616 patent") on October 14, 2003, after full and fair examination of Application No. 09/935,081, which was filed on August 21, 2001.

82.     Fleet Connect owns all substantial rights, interest, and title in and to the '616 patent, including the sole and exclusive right to prosecute this action and enforce the '616 patent against infringers and to collect damages for all relevant times.

83.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '616 patent.

84.     The claims of the '616 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods of producing or generating a pilot phase error metric.

85.     The written description of the '616 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

86.     Defendants have directly infringed one or more claims of the '616 patent by making,

using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

87.     Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 12 of the '616 patent, as detailed in **Exhibit J** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,633,616).

88.     Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 6,549,583

89.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

90.     The USPTO duly issued U.S. Patent No. 6,549,583 (the "'583 patent") on April 15, 2003, after full and fair examination of Application No. 09/790,429, which was filed February 21, 2001.

91.     Fleet Connect owns all substantial rights, interest, and title in and to the '583 patent, including the sole and exclusive right to prosecute this action and enforce the '583 patent against infringers and to collect damages for all relevant times.

92.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '583 patent.

93.     The claims of the '583 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include

inventive components that improve upon the function and operation of preexisting error estimation methods.

94.    The written description of the '583 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

95.    Defendants have directly infringed one or more claims of the '583 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

96.    Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '583 patent, as detailed in **Exhibit K** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,549,583).

97.    Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VIII:    INFRINGEMENT OF U.S. PATENT NO. 7,206,837

98.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

99.    The USPTO duly issued U.S. Patent No. 7,206,837 (the "'837 patent") on April 17, 2007, after full and fair examination of Application No. 10/287,151, which was filed November 4, 2002.

100.    Fleet Connect owns all substantial rights, interest, and title in and to, the '837 patent including the sole and exclusive right to prosecute this action and enforce the '837 patent against infringers and to collect damages for all relevant times.

101.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '837 patent.

102.    The claims of the '837 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.    Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

103.    The written description of the '837 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

104.    Defendants have directly infringed one or more claims of the '837 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

105.    Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '837 patent, as detailed in **Exhibit L** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,206,837).

106.    Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for

such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IX: <u>INFRINGEMENT OF U.S. PATENT NO. 7,593,751</u>

107.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

108.    The USPTO duly issued U.S. Patent No. 7,593,751 (the "'751 patent") on September 29, 2009, after full and fair examination of Application No. 11/262,699, which was filed on October 31, 2005.

109.    Fleet Connect owns all substantial rights, interest, and title in and to the '751 patent, including the sole and exclusive right to prosecute this action and enforce the '751 patent against infringers and to collect damages for all relevant times.

110.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '751 patent.

111.    The claims of the '751 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems and methods for executing field operations using handheld devices.

112.    The written description of the '751 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

113.    Defendants have directly infringed one or more claims of the '751 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

114.    Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '751 patent, as detailed in **Exhibit M** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,593,751).

115.    Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT X:  INFRINGEMENT OF U.S. PATENT NO. 6,961,586

116.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

117.    The USPTO duly issued U.S. Patent No. 6,961,586 (the "'586 patent") on November 1, 2005, after full and fair examination of Application No. 09/955,543, which was filed on September 17, 2001.  A Certificate of Correction was issued on June 25, 2013.

118.    Fleet Connect owns all substantial rights, interest, and title in and to the '586 patent, including the sole and exclusive right to prosecute this action and enforce the '586 patent against infringers and to collect damages for all relevant times.

119.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '586 patent.

120.    The claims of the '586 patent are not directed to an abstract idea and are not limited to

well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems and methods for executing field operations using handheld devices.

121.     The written description of the '586 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

122.     Defendants have directly infringed one or more claims of the '586 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

123.     Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 9 of the '586 patent, as detailed in **Exhibit N** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,961,586).

124.     Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT XI: **INFRINGEMENT OF U.S. PATENT NO. 8,494,581**

125.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

126.     The USPTO duly issued U.S. Patent No. 8,494,581 (the "'581 patent") on July 23, 2013, after full and fair examination of Application No. 12/547,363, which was filed on August

25, 2009.

127.    Fleet Connect owns all substantial rights, interest, and title in and to the '581 patent, including the sole and exclusive right to prosecute this action and enforce the '581 patent against infringers and to collect damages for all relevant times.

128.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '581 patent.

129.    The claims of the '581 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.    Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems of collecting and communicating field data based on geographical location.

130.    The written description of the '581 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

131.    Defendants have directly infringed one or more claims of the '581 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

132.    Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claims 21 and 22 of the '581 patent, as detailed in **Exhibit O** (Evidence of Use Regarding Infringement of U.S. Patent No. 8,494,581).

133.    Fleet Connect has been damaged as a result of the infringing conduct by Defendants

alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT XII: INFRINGEMENT OF U.S. PATENT NO. 6,647,270

134.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

135.    The USPTO duly issued U.S. Patent No. 6,647,270 (the "'270 patent") on November 11, 2003, after full and fair examination of Application No. 09/659,074, which was filed September 11, 2000.

136.    Fleet Connect owns all substantial rights, interest, and title in and to the '270 patent, including the sole and exclusive right to prosecute this action and enforce the '270 patent against infringers and to collect damages for all relevant times.

137.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '270 patent.

138.    The claims of the '270 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of mobile communications and tracking systems.

139.    The written description of the '270 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of

the invention.

140.    Defendants have directly infringed one or more claims of the '270 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

141.    Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '270 patent, as detailed in **Exhibit P** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,647,270).

142.    Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT XIII:**        **INFRINGEMENT OF U.S. PATENT NO. 7,092,723**

143.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

144.    The USPTO duly issued U.S. Patent No. 7,092,723 (the "'723 patent") on August 15, 2006, after full and fair examination of Application No. 10/679,784, which was filed October 6, 2003.

145.    Fleet Connect owns all substantial rights, interest, and title in and to the '723 patent, including the sole and exclusive right to prosecute this action and enforce the '723 patent against infringers and to collect damages for all relevant times.

146.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '723 patent.

147.    The claims of the '723 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.    Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

148.    The written description of the '723 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

149.    Defendants have directly infringed, and continue to directly infringe, one or more claims of the '723 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

150.    Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '723 patent, as detailed in **Exhibit Q** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,092,723).

151.    Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above.    Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT XIV:**            **INFRINGEMENT OF U.S. PATENT NO. 7,741,968**

152.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

153.    The USPTO duly issued U.S. Patent No. 7,741,968 (the "'968 patent") on June 22,

2010, after full and fair examination of Application No. 12/143,707, which was filed on June 20, 2008.

154.     Fleet Connect owns all substantial rights, interest, and title in and to the '968 patent, including the sole and exclusive right to prosecute this action and enforce the '968 patent against infringers and to collect damages for all relevant times.

155.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '968 patent.

156.     The claims of the '968 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of systems and methods for permissive navigational tracking where the sending party selectively transmits navigation data to a receiving party over a period of time.

157.     The written description of the '968 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

158.     Defendants have directly infringed, and continue to directly infringe, one or more claims of the '968 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

159.     Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 4 of the '968 patent, as detailed in **Exhibit R** (Evidence of Use Regarding

Infringement of U.S. Patent No. 7,741,968).

160.    Defendants had knowledge of the '968 patent at least as of the date Defendants were notified of the filing of this action.

161.    Since at least the time of receiving the complaint, Defendants have indirectly infringed and continue to indirectly infringe the '968 patent by inducing others to directly infringe the '968 patent.  Defendants have induced and continue to induce customers and end-users, including, but not limited to, Defendants' customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '968 patent by providing or requiring use of the Accused Products.  Defendants have taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '968 patent, including, for example, claim 4. *See* Exhibit R.

162.    Such steps by Defendants have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support to users.  Defendants have been performing these steps, which constitute induced infringement with the knowledge of the '968 patent and with the knowledge that the induced acts constitute infringement.  Defendants have been aware that the normal and customary use of the Accused Products by others would infringe the '968 patent. Defendants' inducement is ongoing. *See* Exhibit R.

163.    Since at least the time of receiving the complaint, Defendants have indirectly infringed and continue to indirectly infringe by contributing to the infringement of the '968 patent.

Defendants have contributed and continue to contribute to the direct infringement of the '968 patent by their customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '968 patent, including, for example, claim 4. The special features constitute a material part of the invention of one or more of the claims of the '968 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing. *See* <u>Exhibit R</u>.

164.    Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of Fleet Connect's patent rights.

165.    Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

166.    Defendants' direct infringement of the '968 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

167.    Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **<u>DEMAND FOR JURY TRIAL</u>**

168.    Fleet Connect hereby requests a trial by jury on all issues so triable by right.

## **<u>PRAYER FOR RELIEF</u>**

169.    WHEREFORE, Fleet Connect requests that the Court find in its favor and against Defendants, and that the Court grant Fleet Connect the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendants or others acting in concert therewith;

b.    Judgment that Defendants accounts for and pays to Fleet Connect all damages to and costs incurred by Fleet Connect because of Defendants' infringing activities and other conduct complained of herein;

c.    Judgment that Defendants' infringement of the '388 patent and the '968 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d.    Pre-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

e.    That this Court declare this an exceptional case and award Fleet Connect its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

f.    All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>June 10, 2025</u>                         Respectfully submitted,

                                        By:<u>/s/ James F. McDonough, III</u>

C. Matthew Rozier (CO 46854) *
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305, (202) 316-1591
Email: matt@rhmtrial.com

Jonathan Hardt (TX 24039906) *
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

*Attorneys for* **FLEET CONNECT SOLUTIONS** *LLC*

                                        *Admitted to the Eastern District of Texas

**<u>List of Exhibits</u>**

A.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,058,040 – LTE, Wifi, Bluetooth
B.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,058,040 – LTE
C.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,742,388 – LTE, Wifi, Bluetooth
D.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,742,388 – LTE
E.  Evidence of Use Regarding Infringement of U.S. Patent No. 8,005,053
F.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,656,845 – LTE, Wifi, Bluetooth
G.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,656,845 – LTE
H.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,260,153 – LTE, Wifi
I.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,260,153 – LTE
J.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,633,616
K.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,549,583
L.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,206,837

M.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,593,751
N.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,961,586
O.  Evidence of Use Regarding Infringement of U.S. Patent No. 8,494,581
P.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,647,270
Q.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,092,723
R.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,741,968